**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION CINCINNATI**

UNITED STATES OF AMERICA,

        Plaintiff,

    vs.

QIAN WILLIAMS,

        Defendant.

Case No.1:17-CR-00117-MRB

Judge Michael R Barrett

**ORDER**

This matter is before the Court on Defendant's: (1) October 31, 2017 Motion to Suppress (Doc. 22); (2) October 31, 2017 Supplemental Motion to Suppress Statement (Doc. 21); and (3) July 17, 2018 Motion to Suppress (Doc. 57). On August 15, 2018, the government filed the United States' Memorandum in Opposition to Defendants' [sic] Motions to Suppress. (Doc. 61). On August 27, 2018, the Court held a hearing with respect the foregoing motions. Accordingly, this matter is ripe for disposition.

**I.      BACKGROUND**

On August 17, 2017, Drug Enforcement Administration (DEA) Task Force Agent Kenneth Baker appeared before a judge of the Hamilton County Municipal Court with an application seeking a search warrant for 1412 Randomhill Road, Springfield Township, Hamilton County, Ohio. The affidavit in support made reference to two neighboring properties: 1412 Randomville Road, Cincinnati, Ohio (the "1412 property"); and 1416 Randomhill Road, Cincinnati, Ohio (the "1416 property"). The affidavit also included the following assertions,

*inter alia*, to support that heroin and other contraband were concealed at the 1412 property in violation of Ohio Rev. Code §2925.03:

A. The affiant and other officers were investigating information regarding Qian Williams, originating with two separate sources of information (SOI) indicating that Williams sells and supplies heroin and cocaine to mid-level dealers on a regular basis in the "southern district of Ohio and Northern KY."

B. On August 2, 2017, a DEA Confidential Source (CS) conducted a controlled phone call requesting to purchase one ounce of "pup" (a slang term used for heroin), during which phone call Williams agreed and "settled on a negotiated price of $2000." The same day, agents observed Williams exit the 1416 property at approximately 11:16 a.m. and enter a 2007 Chevy Impala that had previously been identified as Williams' vehicle. At approximately 3:30 p.m., Williams called the CS and told him/her to meet him at the Family Dollar located in the Hilltop Plaza. Surveillance units were already in that area, and captured Williams arriving at the lot in the Chevy Impala. At approximately 3:32 p.m., the CS parked next to Williams. Williams handed the CS a plastic bag containing a "rocky light brown substance," which the CS weighed using a digital scale to confirm the weight. The weight confirmed, and the CS handed Williams $2,000 in U.S. currency. Surveillance units monitored Williams drive back toward the 1416 property. At approximately 3:54 p.m., agents observed the Chevy Impala arrive at the 1416 property, where Williams exited the vehicle and entered the residence at the 1416 property.

C. On August 16, 2017, the CS conducted another controlled phone call to Williams requesting one ounce of heroin. Williams agreed to a negotiated price of $2,000.

During the recorded call, Williams and the CS agreed to meet on August 17, 2017 at Lowes located on Colerain Avenue.

D.  On August 17, 2017, at approximately 9:30 a.m., agents set up surveillance of the 1416 property.  At approximately 10:57 a.m., agents observed Williams exiting the 1416 property and departing in the Chevy Impala.   Mobile surveillance followed Williams directly to Lowes.  At approximately 11:16 a.m., the CS and Williams conducted the transaction and Williams was arrested upon completion of the deal.

E.  At the time of Williams' arrest, Special Agent Zevchek read Williams his Miranda rights, as witnessed by Special Agent Zummach.  Williams agreed to speak to case agents, and informed agents that he resided at 1412 Randomhill Road, Cincinnati, Ohio.

F.  Agents were aware that Williams had access to both 1412 and 1416 Randomhill Road, via a previously executed search warrant for the 1416 property, during which agents located mail belonging to Qian Williams with a listed address of 1412 Randomhill Road.  Law enforcement also learned that:

    a.  Williams has listed 1412 Randomhill Road on a warrant recite from Hamilton County;

    b.  The Hamilton County Auditor website showed that an individual believed to be Williams' close relative owned 1412 Randomhill Road;

    c.  During the search incident to Williams' arrest, agents recovered Williams' keyring from the vehicle Williams was operating, and were able to use a key from that ring to disengage the locks at 1412 Randomhill Road.

*See* PXA.  A municipal judge signed the requested warrant for the 1412 property, which was subsequently searched.

After the Defendant was arrested and read his *Miranda* rights, which were memorialized in writing (PX1), Defendant allegedly made several criminal admissions.  During the suppression hearing, Agent Taylor testified that the interview room had no recording capability; however, Defendant's alleged admissions were reduced to writing and provided to the Defendant for affirmation or rejection (PX2).  Defendant allegedly affirmed each one, so indicating by his initials next to each admission/statement and by signing his name at the bottom of the page (PX2).  At the suppression hearing, the government submitted to the Court as exhibits the following:  search warrants (PXA-PXC), Advice of Rights and Waiver (PX1), Admissions (PX2), Waiver of Appearance before United States Magistrate Judge (PX3), Consent to Search (vehicle) (PX4), and consent to search (phone) (PX5).  All but the search warrants bear Defendant's purported signature or initials.

During the hearing, the government offered testimony from multiple Task Force Agents.  Agent Zummach witnessed Agent Zevchek administer *Miranda* rights to Defendant.  Agent Zummach testified that law enforcement employed no coercive or threatening tactics with Defendant.  Agent Taylor testifed that, upon Defendant's arrest on August 17, 2017, Defendant was interested in cooperating with law enforcement, *i.e.*, providing law enforcement with his source of supply.  Defendant accepted law enforcement's offer of cooperation, and was released.  However, Agent Baker testified that, after Defendant's release, Defendant was caught in numerous lies, would refuse to meet with agents, and would even have other individuals call agents pretending to be Williams.

On September 28, 2017, a federal magistrate judge signed an arrest warrant for Qian Williams.

On October 5, 2017, agents used the fruits of the August 17, 2017 search to seek warrants for the 1416 property. In addition to many of the facts cited in the affidavit in support of the August 17, 2017 warrant, the affidavits in support of the October 5, 2017 warrants listed the quantities of cocaine and heroin (suspected), paraphernalia, firearms, and currency ($84,795) that had been located at the 1412 property. Ultimately, a municipal judge signed the warrants for the 1416 property, which was subsequently searched. On October 5, 2017, Williams was taken into custody. Specifically, he was taken into custody after emerging from the rear of the 1416 residence, attempting to evade detection, with suspected drugs on his person. (PXC).

Williams asks this Court to enter an order suppressing all evidence and information obtained as a result of the searches of the 1412 property and the 1416 property, as well as his post-arrest statements. He also seeks dismissal. At the hearing, Defendant denied signing the Advice of Rights and Waiver (PX1), Admissions (PX2), waiver of appearance before United States Magistrate Judge (PX3), and Consent to Search (vehicle) (PX4). He offered the testimony of a handwriting expert who opined that, in his professional opinion, the signatures on the foregoing documents did not belong to Williams. As a comparison, Williams' opinion witness used signature samples from Williams' lease, alarm system agreement, consent to search phone (PX5), and a General Power of Attorney document. (*See* DXA).

## II.     ANALYSIS

The Court will first address Defendant's suppression arguments; thereafter, the Court will address Defendant's dismissal arguments.

Finally, the Court will address Defendant's forgery arguments, which bear on both the suppression and dismissal arguments.

## A. SUPPRESSION

The Fourth Amendment reads in part: "no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." This Amendment is designed to protect the rights of individuals against unreasonable government searches and seizures. *United States v. Ganias*, 755 F.3d 125, 133 (6th Cir. 2014).

Warrants may be issued only upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place. *United States v. Ellison*, 632 F.3d 347, 349 (6th Cir. 2011). The affidavit supporting an application for a search warrant must provide information from which the issuing judge can "make a practical, common sense decision whether, given all the circumstances set forth before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005). A judge's decision to issue a warrant must be reviewed with great deference, and a reviewing court must examine only whether the judge had a "substantial basis" for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 239, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983); *United States v. Frechette*, 583 F.3d 374, 380-81 (6th Cir. 2009). The review of the sufficiency of the evidence is limited to the four corners of the affidavit. *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006); *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005).

A defendant may seek the suppression of evidence by filing a pretrial motion with the court. Fed. R. Crim. P. 12(b)(3)(C). "It is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." *United States v. Patel*, 579 F.App'x 449, 453 (6th Cir. 2014) (citing *United States v. Rodriguez—Suazo*, 346 F.3d 637, 643 (6th Cir.2003)). Defendant's Motions (Docs. 21, 22, 57) argue for suppression on numerous theories, which will be addressed in turn.

### 1.  Credibility of the Confidential Informant

Defendant argues that the affidavits do not establish the credibility of the confidential informant, presumably referring to the SOI and/or CS. This argument is not well taken. Where an affidavit does not expressly vouch for the reliability or credibility of a confidential informant, the affidavit can still provide sufficient probable cause to sustain the issuance of a search warrant. *United States v. Jackson*, 470 F.3d 299, 307-08 (6th Cir. 2006); *United States v. Coffee*, 434 F.3d 887, 894-95 (6th Cir. 2006). The affidavit in *Coffee* contained no averments that the confidential informant was reliable based on prior contacts, but the court found probable cause due to police corroboration detailing the circumstances of the controlled cocaine purchase. *Id. Accord*: *Jackson*, 470 F.3d at 307-08. Here, the affidavits contain sufficient information to establish the credibility of the SOI/CS. The controlled phone calls and the controlled purchases, combined with agent surveillance and specific details regarding time and items, would allow a judge or magistrate to independently conclude that the informant was reliable.

### 2.  The Affiant Relied on Information he did not Personally Observe

Defendant also challenges the warrants on the basis that the officer submitting the affidavits in municipal court did not personally observe the alleged drug transactions; however,

there is no requirement – constitutional, statutory, or otherwise – that warrant applications be based exclusively on an affiant's personal observations. Defendant's reliance on *Pennsylvania v. Labron,* 518 U.S. 938 (1996) is misplaced. In *Labron*, the Supreme Court of the United States affirmed the state courts' finding that probable cause supported a warrantless search of an automobile, because "police had seen respondent Labron put drugs in the trunk of the car[.]" *Id*. at 940. While *Labron* supports the proposition that an officer's personal observations of drug activity may support a warrantless search, it does not stand for the entirely separate proposition that an affiant's averments supporting an application for a search warrant must be based only on personal observations. Indeed, officers have obtained valid warrants in reliance on personal observations made by reliable, confidential informants. *United States v. Allen,* 211 F.3d 970, 971 (6th Cir. 2000) (*en banc*); *United States v. Pelham,* 801 F.2d 875, 878 (6th Cir. 1986). Here, the affiant relied on a DEA confidential source coupled with surveillance. Accordingly, Defendant's argument is not well taken.

### 3. Staleness

Defendant argues that the information in the warrants is stale, presumably on the basis that the October 5, 2017 warrants relied in part on evidence predating, or gathered during, the August 17, 2017 search.

"[S]tale information cannot be used in a probable cause determination[.]" *United States v. Perry*, 864 F.3d 412, 414 (6th Cir. 2017) (quoting *United States v. Frechette*, 583 F.3d 374, 377 (6th Cir. 2009)). Whether evidence is stale is a flexible inquiry that does not "create an arbitrary time limitation within which discovered facts must be presented to a magistrate." *United States v. Greene,* 250 F.3d 471, 480 (6th Cir. 2001)). In the Sixth Circuit, courts consider

factors including: (1) the character of the crime, (2) the criminal, (3) the thing to be seized, and (4) the place to be searched. *Id.*

In drug cases, the Sixth Circuit has affirmed an affiant's reliance on drug transactions that predated the warrant application by as much as 23 months. *Greene*, 250 F.3d at 480-81. In *Greene*, the Sixth Circuit held that 23-month-old evidence of drug sales was not stale when paired with information regarding a drug delivery in the prior month. *Id. Accord*: *United States v. Spikes*, 158 F.3d 913, 924 (6th Cir. 1998) ("[E]ven assuming the information in the affidavit was in some respects 'stale,' the more recent events related therein refreshed this otherwise stale information."). Here, the Court is not persuaded that the two-month-old evidence in this context was stale: the controlled phone calls were made on August 2 and August 17, 2017; an arrest warrant was sought and obtained on September 28, 2017; and, Defendant was arrested on October 5, 2017. However, even if the Court were to assume *arguendo* that the August 2017 drug transactions and other evidence had become outdated, the October 5, 2017 affidavits included information refreshing the August 2017 information. Specifically, the October 5, 2017 affidavit included information regarding suspected drugs found on Defendant's person *that day*, when he was emerging from the rear of the 1416 property, after Defendant was perceived as attempting to evade detection by law enforcement. In this context, the Court is not persuaded by Defendant's staleness argument.

       4. Probable Cause, and Nexus Between the Places to be Searched and Criminal Activity

Defendant argues that law enforcement did not witness any crimes taking place at the 1412 or 1416 properties, and thus the requisite probable cause and the nexus between the place(s) to be searched and the suspected criminal activity were lacking.

Pursuant to the Fourth Amendment, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. Determining whether an affidavit establishes probable cause is not a technical analysis; probable cause is a fluid concept based on the totality of the circumstances and confined to the four corners of the affidavit. *United States v. Sawyers,* 127 Fed. Appx. 174, 179 (6th Cir. 2005) (citing *Illinois v. Gates,* 462 U.S. at 232). The court must employ a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. at 238.

"To justify a search, the circumstances must indicate why evidence of illegal activity will be found in a particular place. There must, in other words, be a nexus between the place to be searched and the evidence sought." *United States v. Carpenter,* 360 F.3d 591, 594 (6th Cir. 2004) (*en banc*) (quoting *Illinois v. Gates,* 462 U.S. at 238–39). "[I]n the case of drug dealers, evidence is likely to be found where the dealers live." *United States v. Jones*, 159 F.3d 969, 975 (6th Cir. 1998) (citation omitted). Thus, in some cases, the Sixth Circuit has "permitted judges to infer a fair probability of finding evidence in a residence even though the affidavit did not state that such evidence had been observed [there] directly." *United States v. Brown*, 828 F.3d 375, 383 (6th Cir. 2016). In such cases, "some reliable evidence connecting the known drug dealer's ongoing criminal activity to the residence" is required. *Id.* "[T]hat is, [the Sixth Circuit] ha[s] required facts showing that the residence had been used in drug trafficking, such as an informant who observed drug deals or drug paraphernalia in or around the residence." *Brown*, 828 F.3d at 383. However, "[w]hen a warrant application presents reliable evidence that a drug-trafficking operation is ongoing, 'the lack of a direct known link between the criminal activity and [dealer's] residence, becomes minimal.'" *United States v. McCoy*, No. 17-4245, 2018 U.S.

App. LEXIS 26859, at *13 (6th Cir. Sep. 20, 2018) (citing *United States v. Newton*, 389 F.3d

631, 635-36 (6th Cir. 2007)).  Thus, "[u]nder this continual-and-ongoing-operations theory, [the

Sixth Circuit has] at times found a nexus between a defendant's residence and illegal drug

activity with no facts indicating that the defendant was dealing drugs from his residence."

*McCoy*, 2018 U.S. App. LEXIS 26859, at *13-14.

First, the affidavits established Defendant's connection to both the 1412 and 1416

properties, and further established that Defendant treated both as his residence depending on the

circumstances.  *See* Section I, *supra*.  Furthermore, the affidavits established a fair probability

that drugs would be located at each property.

First, the evidence cited in the affidavits establishes a fair probability that Defendant

stored drugs at the 1416 property.  Each time the DEA CS contacted Defendant via telephone to

purchase drugs, Defendant emerged from the 1416 property to complete the transaction at an off-

site location.  Specifically, on two separate dates (August 2 and August 17, 2017), Defendant

was surveilled emerging from the 1416 property, entering his vehicle, and driving to an off-site

location to meet with the DEA CS.  After the drug deal on August 2, 2017, Defendant was

surveilled returning to the 1416 property.  Furthermore, before Defendant was arrested on

October 5, 2017, he emerged from the rear of the 1416 property.  Upon his search incident to

arrest, law enforcement found suspected drugs on his person.  (*See* PXC).  These facts, in

totality, establish a fair probability that Defendant was storing drugs at the 1416 property.  *See,*

*e.g.*, *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (describing when officers

may reasonably infer that "an individual arrested outside his residence with drugs in his pocket is

likely to have stored drugs and related paraphernalia in that same residence").  Thus, even

ignoring the affidavits' reference to drugs found inside the 1412 property on August 17, 2017,

the two October 5, 2017 affidavits for the 1416 property (PXB and PXC) establish the requisite nexus.

Second, the evidence cited in the earlier, August 17, 2017 affidavit establishes a fair probability that drugs were being stored at the 1412 property. Upon Defendant's arrest in August, Defendant told agents that he resided at 1412 Randomhill Road. Furthermore, officers were able to use a key obtained from Defendant's car's keyring to disengage the locks at the 1412 property. Records maintained by the Hamilton County Auditor reflected that the 1412 property was owned by a close relative of Defendant. Given the proximity of the 1412 and 1416 properties, Defendant's access to both, surveillance, and multiple, recent sales to a controlled buyer, the August 17, 2017 affidavit established the nexus required. *See Newton*, 389 F.3d at 635-36 ("with continuing criminal operations, any issue of . . . a direct known link between the criminal activity and residence, becomes minimal").

### 5. Bare Bones Affidavits

Defendant challenges the warrants, on the basis they were predicated on "bare bones affidavits." An affidavit that is so lacking in indicia of probable cause that no reasonable officer would rely on the warrant has come to be known as a "bare bones" affidavit. *See United States v. Weaver*, 99 F.3d 1372, 1380 (6th Cir. 1996). A bare bones affidavit is generally defined as one that states only "suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (quoting *Weaver*, 99 F.3d at 1378)). However, none of the affidavits in this case are conclusory in nature or based merely on suspicions or beliefs; each detail multiple controlled calls, controlled buys, and surveillance establishing probable cause to search the 1412 and 1416 properties. *See* Section I, *supra*.

6. "General Warrants"

Defendant challenges the warrants as general warrants. The Fourth Amendment requires that a warrant describe with particularity both the place to be searched and the things or person to be seized. *United States v. Grubbs,* 547 US. 90, 97 (2006); U.S. Const. amend. IV. The chief concern of the requirement is to prevent "[g]eneral warrants," which "create a danger of unlimited discretion in the executing officer's determination of what is subject to seizure." *United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988) (quotation omitted). To assuage that concern, courts "require[e] a neutral judicial officer to cabin the scope of the search to those areas and items for which there exists probable cause that a crime has been committed." *Baranski v. Fifteen Unknown Agents of the Bureau of Alcohol, Tobacco &Firearms*, 452 F.3d 433, 441 (6th Cir. 2006) (*en banc*). *U.S. v. Raglin*, 663 Fed. Appx. 409, 412 (6th Cir. 2016), cert. denied, 138 S. Ct. 354 (2017). "[T]he problem [posed by the general warrant] . . . is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings"; thus, the Fourth Amendment addresses the problem "by requiring a 'particular description' of the things to be seized." *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971). A warrant satisfies the particularity requirement "if its text constrains the search to evidence of a specific crime." *United States v. Castro,* 881 F.3d 961, 965 (6th Cir. 2018).

Here, the warrants describe with particularity the places to be searched with respect to a specific crime. The warrants are not general in nature.

7. "Daytime" Search

Defendant challenges the warrants, on the basis that they did not expressly authorize a daytime search. This issue is governed by Rule 41 of the Federal Rules of Criminal Procedure, which states in pertinent part that the "warrant . . . must command the officer to 'execute the

warrant during the daytime, unless the judge for good cause expressly authorizes execution at another time[.]'" Fed. R. Crim. P. 41(e)(2)(A)(ii). The Court interprets Fed. R. Crim. P. 41(e)(2)(A)(ii) as establishing daytime searches as the default rule; otherwise, a judge authorizing a search at "another time" (*i.e.*, a nighttime search) must do so expressly based on a finding of good cause.

Here, it appears that Defendant would have this Court invalidate the warrants because they failed to expressly authorize a daytime search, or any time at all. However, there is no dispute that the searches in question were executed during the daytime. Despite being silent on the time of day, law enforcement still complied with the default rule established in Fed. R. Crim. P. 41(e)(2)(A)(ii). The Court can find no authority for invalidating a search warrant in such circumstances. Accordingly, Defendant's argument is not well taken.

### 8. Seal

Defendant challenges the warrants, because they were based on affidavits that do not contain a seal. However, there is no requirement under federal law or the Rules of Criminal Procedure that states that an affidavit must contain a seal.

### 9. Authority

Defendant argues that federal agents have no authority to execute a warrant issued by a Hamilton County judge. Here, the warrant was executed by members of a task force comprised of federal, state, and local law enforcement officials. There is no requirement under federal law or the Rules of Criminal Procedure that states that only county officials may execute a county-issued search warrant.

## 10. The Returns for Each Search Warrant

Defendant argues that the returns for each search warrant were never returned to the same judge who signed the warrants. Although important, the procedures required for execution and return of a search warrant are ministerial in nature. *Evans v. United States,* 242 F.2d 534, 536 (6th Cir. 1957); *United States v. Moore,* 452 F.2d 569 (6th Cir. 1971). Absent a showing of prejudice, irregularities in these procedures do not void an otherwise valid search warrant. *United States v. McKenzie,* 446 F.2d 949, 954 (6th Cir.1971). Here, there is no showing of prejudice, so Defendant's argument is not well taken.

## 11. *FRANKS* ISSUES

Defendant suggests that that agents misrepresented facts or were intentionally reckless when presenting the affidavits to the municipal judge, citing for example that Defendant was never identified as the person on the controlled calls, and that the affiants withheld from the municipal judge the fact that Defendant had been stopped and arrested by the state police.

In *Franks*, the Supreme Court of the United States held:

> "[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request."

*Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S. Ct. 2674, 2676 (1978). Here, such a request was not made. Even if it had, Defendant failed to make the offers of proof necessary to show entitlement to such a hearing. *Id*. at 171. Accordingly, Defendant's argument is not well taken.

The Court thus rejects the above arguments seeking suppression of evidence.

## B. DISMISSAL

The Sixth Circuit guides district courts to "dispose of all motions before trial if they are capable of determination without trial of the general issue." *U.S. v. Jones*, 542 F.2d 661, 665 (6th Cir. 1976). Moreover, "Rule 12 vests the court with authority 'to determine issues of fact in such manner as the court deems appropriate.'" *Id*. (quoting Notes of the Advisory Committee to Fed. R. Crim. P. 12, reprinted in 8 Moore, Federal Practice 12.01(3) at 12-8 (2d ed. 1976)).

The Federal Rules of Criminal Procedure "clearly envision that a district court may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motion so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." *Jones*, 542 F.2d at 664. A defense raised in a motion to dismiss an indictment is "capable of determination if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *Id*. (citing *United States v. Covington*, 395 U.S. 57, 60, 89 S. Ct. 1559, 23 L. Ed. 2d 94 (1969)).

On a motion to dismiss an indictment, "the [c]ourt must view the [i]ndictment's factual allegations as true, and must determine only whether the [i]ndictment is 'valid on its face.'" *U.S. v. Campbell*, No. 02-80863, 2006 U.S. Dist. LEXIS 16779, at *2 (E.D. Mich. Apr. 6, 2006) (citing *Costello v. United States*, 350 U.S. 359, 363, 76 S. Ct. 406, 100 L. Ed. 397, 1956-1 C.B. 639 (1956)). Accordingly, the Court must resolve factual issues in this case, such as they exist, in favor of the indictment.

1. Venue and Jurisdiction

Defendant generally asserts that venue and jurisdiction in this Court are improper. However, federal courts have jurisdiction over federal crimes. 18 U.S.C. § 3231; *United States v. Allen,* 954 F.2d 1160, 1165-66 (6th Cir. 1992). When prosecuting a federal criminal offense, the government is limited to pursuing the offense "in a district where the offense was committed." Fed. R. Crim. P. 18; *United States v. O'Donnell,* 510 F.2d 1190, 1192 (6th Cir. 1975). Here, Defendant was charged with violating federal law in the Southern District of Ohio; therefore, venue and jurisdiction are proper.

2. Sufficiency of the Criminal Complaint

Defendant argues that the criminal complaint is defective, and fails to establish a crime committed by Defendant.

An arrest warrant shall be issued only upon a written and sworn complaint (1) setting forth "the essential facts constituting the offense charged," and (2) showing "that there is probable cause to believe that (such) an offense has been committed and that the defendant has committed it." *Giordenello v. U.S.*, 357 U.S. 480, 485–86 (1958). The purpose of the complaint is to enable the appropriate magistrate judge to determine whether the probable cause required to support an arrest warrant exists. *Id.* The magistrate judge must judge for herself the persuasiveness of the facts relied on by a complaining officer to show probable cause. *Id.* Here, the criminal complaint fulfilled its function by enabling the magistrate judge to determine whether probable cause for an arrest warrant existed. *Id. Accord*: *United States v. Fachini*, 466 F.2d 53, 56 (6th Cir. 1972). Defendant's argument is not well taken.

### 3. "Fake" Arrest Warrant

Defendant argues that the arrest warrant is fake. However, Defendant has offered no basis for his broad claim that the arrest warrant is fake. Accordingly, Defendant's argument is not well taken.

### 4. No "Return" on Arrest Warrant

Defendant asserts that the arrest warrant should be voided because no return was completed. However, the government persuasively argues that the return of the warrant is ministerial and any failure therein does not void the warrant. *See U.S. v. Moore*, 452 F.2d 569, 573 (6th Cir. 1971). Thus, Defendant's argument is not well taken.

### 5. Constitution of the Grand Jury

Defendant argues that the grand jury was not properly constituted.

"[T]he law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." *U.S. v. R. Enterprises, Inc.*, 498 U.S. 292, 300–01 (1991). The government persuasively argues that Defendant has not made any specific allegations about the grand jury being improperly constituted, nor is his general allegation supported by evidence or facts. Accordingly, Defendant's argument is not well taken.

### 6. Signature of the Grand Jury Foreperson

Defendant also argues that the grand jury foreperson failed to sign the indictment. Although not made public, the Court's records reflect that the grand jury foreperson did indeed sign the indictment. (Doc. 12). Regardless, the foreperson's duty to sign the indictment is simply a formality, "for the absence of the foreman's signature is a mere technical irregularity that is not necessarily fatal to the indictment." *Hobby v. United States*, 468 U.S. 339, 345 (1984) (citing *Frisbie v. United States*, 157 U.S. 160, 163-65 (1895)). *Accord*: *In re Suber*, No. 18-

3457, 2018 U.S. App. LEXIS 25107, at *4 (6th Cir. Sep. 4, 2018).  Accordingly, Defendant's argument is not well taken.

7.   Vindictive Prosecution

Defendant argues that the prosecution is vindictive, because he was first stopped and released on August 17, 2017, and later subjected to police action again in October of 2017.

A defendant may establish prosecutorial vindictiveness through one of two approaches. *United States v. Ogbazion*, No. 3:15-cr-104, 2017 U.S. Dist. LEXIS 54465, at *9 (S.D. Ohio April 10, 2017) ("Thus, '[a] defendant alleging prosecutorial vindictiveness must show either 'actual vindictiveness' or a 'realistic likelihood of vindictiveness.'").  First, a defendant may demonstrate actual vindictiveness, i.e., he may establish through objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights.  This showing, however, is "exceedingly difficult to make." *Bragan v. Poindexter*, 249 F.3d 476 (6th Cir. 2001). Second, a defendant may show a "realistic likelihood of vindictiveness."  To show a "realistic likelihood of vindictiveness," the defendant must show: "(1) exercise of a protected right; (2) the prosecutor's 'stake' in the exercise of that right; (3) the unreasonableness of the prosecutor's conduct; and, presumably, (4) that the prosecution was initiated with the intent to punish the [defendant] for the exercise of the protected right." *Ogbazion*, 2017 U.S. Dist. LEXIS 54465, at *9 (citing *United States v. Dupree*, 323 F.3d 480, 489 (6th Cir. 2003)).

Here, Defendant offers no valid basis for his vindictive prosecution argument.  He fails to argue what, if any, purported legal right he has exercised and what, if any, punishing conduct followed.  These are just two of multiple defects in his argument.

The Court thus rejects the above arguments seeking dismissal.

## C.  FORGERY RELATED CHALLENGES

Defendant argues that various documents bearing his purported signature, offered by the government at the hearing (PX1-PX4), are forgeries.  Such documents include his August 17, 2017 *Miranda* waiver (PX1), admissions (PX2), waiver of appearance before magistrate judge (PX3), and consent to search (PX4).  The Defendant argues, *inter alia*, that his post-arrest statements must be suppressed.  The Court will address here all of his arguments that relate to the authenticity of Defendant's signature on the challenged documents.

At the outset, the Court would observe that forgery is a "very serious allegation, particularly as it suggests misconduct by government agents."  *United States v. Walia*, No. 14-CR-213 (MKB), 2014 U.S. Dist. LEXIS 98339, at *39 (E.D.N.Y. July 18, 2014).  If, for example, the signature on Defendant's *Miranda* waiver were forged, Defendant's post-arrest statements may be subject to suppression absent a separate, valid waiver.  That said, in this case, the validity of the search warrants is not dependent on the outcome of Defendant's forgery argument.  Even if the Court were to assume *arguendo* that Defendant's post-arrest signatures were forged or traced, the affidavits underlying the various search warrants do not rely on Defendant's post-arrest statements, with one exception.  The August 17, 2017 affidavit makes reference to Defendant's admission that he resided at 1412 Randomhill Road; however, even excising that statement from the affidavit, other sources (keys, mail, county auditor records, etc.) established Defendant's connection to the 1412 property.

However, Defendant's forgery argument bears on his request to suppress his post-arrest statements, and other arguments raised in his Motions to Suppress (*i.e.*, illegal detention, delayed presentment to the grand jury).  Thus, the Court must pass on the evidence presented at the hearing.  "When determining whether to grant a defendant's motion to suppress, district courts

are often confronted with factual disputes." *United States v. Jones*, No. 2:06-cr-202, 2007 U.S. Dist. LEXIS 87221, at *18 (S.D. Ohio Nov. 27, 2007) (citing *United States v. Matlock*, 415 U.S. 164, 173-75, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974); *United States v. Brown*, 20 F. App'x 387, 388-89 (6th Cir. Sept. 21, 2001) (unpublished) (citing *United States v. Bradshaw*, 102 F.3d 204, 209-10 (6th Cir. 1996)). In resolving factual discrepancies, the court must judge the credibility of witnesses and weigh the evidence presented. *Brown*, 20 F. App'x at 388-89 (*citing Bradshaw*, 102 F.3d at 209-10)).

On the forgery issue, Defendant offered the testimony of two witnesses: (1) an expert in handwriting analysis; and (2) himself. Ultimately, the Court accepts Defendant's opinion witness as an expert in handwriting analysis; however, even in light of expert's conclusions, the Court does not find Defendant's disavowal of the various signatures to be credible. Accordingly, the Court will not suppress Defendant's post-arrest statements, which were made after signing a waiver that the Court accepts as valid at this juncture; however, Defendant is not foreclosed from challenging the legitimacy of the signatures/admissions at trial.

Because the Court rejects Defendant's forgery argument, the Court will now turn to the remainder of his arguments that relate to the forgery issue.

          a.   Illegal Detention

Defendant argues that, upon first being detained, he should have immediately been taken before a judge or a magistrate.

An arrested defendant must be taken without unnecessary delay before a magistrate judge. Fed. R. Crim. Proc. 5(a)(1)(A). However, the government presented evidence that such a requirement was mooted by Defendant's agreement to cooperate and release shortly thereafter. He also signed a Waiver of Appearance before United States Magistrate Judge (PX3). Having

rejected Defendant's forgery argument at this juncture, his illegal detention argument also fails in light of the foregoing waiver.

b.  Review by a Grand Jury

Defendant argues that this matter was not presented to the grand jury until October 18, 2017, even though he was first arrested on August 17, 2017.  An arrestee may waive the requirement of prompt presentment under the Federal Rules of Criminal Procedure.  *New York v. Hill,* 528 U.S. 110, 114, 145 L.Ed.2d 560 (2000).  Here, Defendant signed a form waiving his right to prompt presentment.  Having rejected Defendant's forgery argument at this juncture, his argument fails in light of the foregoing waiver.

Accordingly, the Court is not persuaded by Defendant's various forgery-related arguments.

## III.    CONCLUSION

Therefore, consistent with the above, Defendants Motions (Doc. 21, 22, 57) are **DENIED**.

**IT IS SO ORDERED.**

s/*Michael R. Barrett*
_____
United States District Judge
